Vaiinupo J. Ala'ilima and Jean L. Ala'ilima v. Commissioner.
Ala'ilima v. Commissioner
Docket No. 77345.
United States Tax Court
T.C. Memo 1961-222; 1961 Tax Ct. Memo LEXIS 134; 20 T.C.M. (CCH) 1096; T.C.M. (RIA) 61222; July 31, 1961
Burton Spear, Esq., for the petitioners. Stephen P. Cadden, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The Commissioner determined a deficiency in petitioners' income tax for the year 1956 in the amount of $1,240.07. The issue for decision is whether petitioners are entitled to an exemption of $600 for each of nine persons claimed by them as dependents on their income tax return. Findings of Fact Petitioners are husband and wife, presently residing at Philadelphia, Pennsylvania. They filed a joint income tax return for the year 1956 with the district director of internal revenue at Baltimore, Maryland. During most of the year 1956 Vaiinupo J. Ala'ilima, hereinafter referred to as petitioner, resided in Takoma Park, Maryland. In the latter part of December 1956 petitioner bought a house in Washington, D.C. Petitioners were married on December 25, 1956, and both resided for a few days of 1956 in the *136 Washington, D. C. house. Petitioner was born on April 13, 1926, in Western Samoa. He came to the United States in June of 1950 as a permanent resident and has now become a citizen of the United States. After petitioner had completed some college work in engineering and liberal arts in the United States, he became desirous of bringing members of his family from Samoa in order that they might obtain education in the United States and return to Samoa to help the people there. He attempted to obtain help from the government and from certain foundations interested in Samoa in this undertaking. When he was unable to obtain assistance, he decided to interrupt his schooling and go to work in order to save money and borrow money to bring members of his family from Samoa to the United States. During 1956 petitioner was employed in Washington, D.C. by the Corps of Engineers of the United States Army. In 1954 petitioner bought the house in Takoma Park, Maryland, in which he lived most of 1956 for the purpose of fulfilling what he believed to be a requirement of the immigration authorities to permit him to bring members of his family from Samoa to the United States. During the year 1956 *137 petitioner's sister, Penelope Ala'ilima, who is about a year older than petitioner, was attending MacMurray College in Illinois. She had a scholarship which paid her tuition including living expenses while at college. During 1956 she spent the summer months and her vacation periods in petitioner's home and petitioner paid her living expenses while she was in his home. He also occasionally gave her money for clothes, transportation to and from Illinois, and other miscellaneous items. In 1956 petitioner paid transportation expenses from Samoa to the United States for his older brother, Sione Ala'ilima; Pita Ala'ilima, another brother; Nu'usa Sau, his brother-in-law; and his cousins, Tuitofa Frost and Fonise Frost. Pita was 18 or 19 years old in 1956 and Nu'usa was 26 or 27. Tuitofa Frost was 14 or 15 years old in 1956 and Fonise Frost was about 17 in that year. All of these persons came to the United States via Pan American Airways. The total cost of such transportation for Tuitofa Frost, Fonise Frost, and Pita Ala'ilima was $1,269.29; and the total cost of transportation for Sione Ala'ilima and Nu'usa Sau was $1,742. Sione Ala'ilima arrived in the United States in September 1956 and *138 lived at the Takoma Park home of petitioner for the balance of the year. Petitioner's brother-in-law, Nu'usa Sau, also arrived in September 1956 and lived for the remainder of that year at the Takoma Park home of the petitioner. Both Sione Ala'ilima and Nu'usa Sau were employed intermittingly as laborers in construction work during 1956 after they arrived in the United States. While in the United States from September to the end of the year 1956 Sione Ala'ilima and Nu'usa Sau each received as wages from the construction company an amount less than $600. Tuitofa Frost, Fonise Frost, and Pita Ala'ilima all arrived in the United States from Samoa in the latter part of November or the early part of December 1956 and resided for the month of December in petitioner's Takoma Park house. Petitioner paid the household expenses and provided the food at the Takoma Park residence. He also bought clothing for his brothers and cousins when they first arrived in the United States. During part of the year 1956 there were various other people residing in petitioner's Takoma Park home including Tau Frost, a cousin of petitioner's; Sini Setope, an uncle; Simi Ala'ilima; and Atome Lupetalialami. When *139 petitioner acquired the Washington, D.C. house in the latter part of 1956, some of the persons residing in the Takoma Park house went there to live and the others remained in the Takoma Park house. Persons other than petitioners contributed to the support of Pita, Tuitofa and Fonise during the year 1956. Petitioner had a home in American Samoa in which his aunt, Ali'itasi S. Tauau, lived. She was born in Western Samoa and went to American Samoa to live in 1932. She is not a citizen of the United States. Ali'itasi's mother also lived in petitioner's house in American Samoa, and Va'atausili S. Ala'ilima and Iakopo Masame, petitioner's nephew and cousin, also resided there. Fonise Frost spent about 3 months in petitioner's home in American Samoa with Ali'itasi before she came to the United States in late November or early December 1956. Petitioner did not charge his aunt or the others that lived in his house in American Samoa any rent. Petitioner sent money to Ali'itasi from time to time during 1956 and also sent clothing to Ali'itasi, her mother, Va'atausili S. Ala'ilima, and Iakopo Masame. The total amount of money that petitioner sent to Ali'itasi in 1956 was at least $400. Ali'itasi *140 did some work in American Samoa during 1956 for which she was paid 25 cents an hour. Her total earnings for the year 1956 were less than $400. Ali'itasi received no money in 1956 except that which she received from petitioner and from her own work. Petitioner, on his income tax return, claimed nine exemptions for persons other than himself and his wife with the following explanation: Number
Did
Amount you
Amount spent
of months
dependent
spent for
by others
dependent
have gross
dependent's
including
lived in
income
support.
dependent
your home
of $600
If 100%
from
Name
Relationship
* * *
or more
write "all"
own funds
Penelope T.
Sister
4
No
$500.00
$200.00
Ala'ilima
Sione Ala'ilima
Brother
12
No
700.00
550.00
Pita Ala'ilima
Brother
8
No
400.00
200.00
Nu'usa Sau
Brother-
8
No
705.00
590.00
in-law
Tuitofa Frost
Cousin
8
No
400.00
200.00
Fonise Frost
Cousin
8
No
400.00
200.00
Ali'itasi S. Tauau
Aunt
12
No
350.00
200.00
Va'atausili S.
Nephew
8
No
70.00
60.00
Ala'ilima
Iakopo Masame
Cousin
7
No
80.00
50.00
Respondent, in the notice of deficiency, disallowed *141 the nine exemptions with the explanation that exemptions for nine relatives were disallowed for failure to prove that they were dependents within the meaning of section 151(e) (as defined in section 152) of the Internal Revenue Code of 1954. Petitioner has not shown that he contributed more than one-half the support of Penelope T. Ala'ilima, Sione Ala'ilima, Pita Ala'ilima, Nu'usa Sau, Tuitofa Frost, or Fonise Frost during the taxable year 1956, that these persons did not have income during the year 1956 in excess of $600 or that their principal place of abode in 1956 was in his household. Ali'itasi S. Tauau, Va'atausili S. Ala'ilima, and Iakopo Masame have not been shown to be citizens of the United States, or to have resided in the United States or a country contiguous thereto, or the Canal Zone, or the Republic of Panama during any portion of the year 1956. Opinion Section 151 of the Internal Revenue Code of 1954 provides that an individual is entitled to an exemption of $600 for each dependent, as defined in section 152, whose gross income for the year is less than $600. Section 152(a) defines the term "dependent" to mean any *142 of the individuals listed therein, over half of whose support was received from the taxpayer. This section lists the persons who may be considered dependents [1] and includes in addition to persons of the relationship therein set forth, an individual who for the taxable year has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household. Section 152(b)(3) of the Internal Revenue Code of 1954 provides, insofar as here pertinent, that the term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States, a country contiguous to the United States, or of the Canal Zone, or of the Republic of Panama. Petitioners *143 have failed to prove that any of the nine dependents claimed by them come within the statutory requirements so as to entitle them to the $600 exemption for such person. Petitioner has failed to show that the scholarship funds furnished to his sister, Penelope, did not provide more than one-half of her support during the year 1956. [2] In fact, the evidence shows that these funds paid Penelope's college tuition and living expenses for at least 8 months of the year which leaves a clear inference that such funds did provide more than one-half of Penelope's support. The record is also devoid of evidence as to what if anything were Penelope's own earnings which helped to provide for her support. The evidence does show that earnings of Sione Ala'ilima and Nu'usa Sau, during the 4 months they were in the United States, from the construction company for which they worked periodically were less than $600. However, the evidence does not show how much less than $600 such earnings were in either case. The evidence is totally devoid of *144 what earnings either Sione or Nu'usa had from other sources during the 4 months they were in the United States or their earnings for the 8 months before they came to the United States or from what source such other earnings, if any, came. The record is also totally devoid of evidence to show that the airline fare paid by petitioner for Sione and Nu'usa, plus the expenses for food, shelter, and clothing after they came to the United States, constitued more than one-half of the support of either of these persons for the year 1956. Pita Ala'ilima did not come to the United States until late November or early December 1956. There is no evidence in the record of Pita's income for 1956, what portion of Pita's entire support was paid in the first 11 months of 1956, or by whom it was paid. The record fails to show whether petitioner contributed over one-half of Pita's support. Tuitofa Frost and Fonise Frost were cousins of petitioner and, therefore, do not have the relationship to petitioner required in the definition of dependent in section 152 (a) of the Internal Revenue Code of 1954. Neither of these two cousins has been shown to have had a principal place of *145 abode in petitioner's home during the year 1956 since they did not arrive in the United States until late November or early December 1956. Even if the 3 months that Fonise lived in petitioner's home in American Samoa is added to the 1 month she lived in his home in Takoma Park, Maryland, petitioner's home would not have been her principal place of abode during 1956. In addition there is no showing of the amount of support of Tuitofa and Fonise paid by others than petitioner during 1956. Petitioner's aunt, Ali'itasi S. Tauau, according to her own testimony was not a citizen of the United States in 1956 and no showing has been made that either Va'atausili S. Ala'ilima or Iakopo Masame was a citizen of the United States in 1956. The birthplace of Va'atausili S. Ala'ilima and Iakopo Masame has not been shown. They resided in American Samoa in 1956 in a home of petitioner's there. Even if we assume that Va'atausili and Iakopo were born in American Samoa or, as petitioner contends, that under the Instrument of Cession by the Chiefs of Tutuila to the United States Government of April 17, 1900, accepted, ratified and confirmed by Congressional Act of February 20, 1929 (45 Stat. 1253, 48 U.S.C. 1431 *146 (a)), members of petitioner's family being descendants of the Chiefs of Tutuila owe permanent allegiance to the United States, so as to be "nationals of the United States," they would not be citizens of the United States. Persons born in American Samoa or owing permanent allegiance to the United States are nationals but not citizens of the United States under the provisions of the Immigration and Nationality Act (66 Stat. 166), 8 U.S.C. 1101(a)(22), 1101(a)(29), and 1408. [3]Section 152(b)(3) of the Internal Revenue Code of 1954 specifically limits dependents to citizens of the United States unless such person is a resident of the United States, a contiguous country, the Canal Zone, or the Republic of Panama. Cf. Rev. Rul. 58-381, 1958-2 C.B. 58. *147 Petitioners have failed to show that they are entitled to an exemption of $600 for any of the nine individuals claimed. Decision will be entered for the respondent. Footnotes
1. Section 152(a) of the Internal Revenue Code of 1954↩ lists the following individuals: A son or daughter of the taxpayer, or a descendant of either; a stepson or stepdaughter; a brother, sister, stepbrother, or stepsister; son or daughter of a brother or sister; brother or sister of the father or mother; or a son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law.
2. Section 152(d) of the Internal Revenue Code of 1954↩ applies only to a son or daughter, stepson or stepdaughter of the taxpayer.
3. SEC. 1101(a)(22) The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States. SEC. 1101(a)(29) The term "outlying possessions of the United States" means American Samoa and Swains Island. SEC. 1408. Nationals but not citizens of the United States at birth Unless otherwise provided in section 1401 of this title, the following shall be nationals, but not citizens, of the United States at birth: (1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession; (2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person; and (3) A person of unknown parentage found in an outlying possession of the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession.↩